The Inhabitants of the first parish in Freeport *vs.* Bartol.

Where an agreement concerning the sale of real estate is contained on two separate papers, neither of which contains in itself any reference to the other, parol evidence is inadmissible to prove their connection.

The doctrine of part performance is not admitted except in Courts of equity.

This action was *assumpsit*, for the price of two pews in a new meeting house built by the plaintiffs. The first count was a general *assumpsit*, referring to a schedule annexed.—The second count stated that the defendant, in consideration of the plaintiffs' promise to build and finish a meeting house in *Freeport*, and make and finish therein, in a reasonable time, for the benefit and use of the defendant, two pews, one on the lower floor and one in the gallery, promised the plaintiffs " to pay them therefor" one hundred and ten dollars in nine installments, all of which were due; —and that the plaintiffs had performed their said engagement.— The third count was a special *indebitatus assumpsit*, for the same sum and interest, in consideration that the plaintiffs had made, finished and completed for the defendant two pews in their meeting house. The issue was *non assumpsit*.

Freeport *v.* Bartol.

At the trial, which was before the *Chief Justice,* the plaintiffs produced their book of records, from which it appeared that at a meeting *Nov.* 11, 1817, the defendant was chosen one of a committee to view the old meeting house, and determine whether it was expedient to build or repair, and in what manner;—that *Dec.* 2, 1817, the defendant was again appointed one of a committee to collect subscriptions, or devise some plan for building a new meeting house, on such spot as they might select;—that *Dec.* 13, this committee made a report to the parish, recommending that the materials of the old house be used as far as they would go, that a new plan be drawn, an estimate made of the expense, a proportionate value fixed to each pew, and the pews then sold at auction, each pew being set up at the price marked on the plan; —and designating the spot on which the house should be erected. This report was accepted, and the defendant, with others, appointed a committee to make a plan and estimate, and receive a deed of the land designated, pledging the credit of the parish for the payment. At a subsequent meeting the day of sale of the pew ground was fixed to be on *Jan.* 3, 1818, and the defendant, with *Samuel Holbrook* and *Nathan Nye* were appointed a committee " to transact the business of selling the pews." The defendant was also appointed one of a committee to superintend the taking down the old, and the building of the new house.

It appeared from the testimony of Mr. *Nye,* that at the sale of the pews on the day appointed, he acted as auctioneer, and the defendant as clerk;—that previous to opening the sale, he wrote down on a piece of paper the terms of the sale, which were publicly read, but not signed by any person; and left it on the table, with the memorandum of the sales made by the defendant, and other papers, but it had since been lost or mislaid, and could not be found;—that these conditions were that the purchase money should be paid in nine equal payments at intervals of sixty days, with interest, and that notes should be given to the parish treasurer for the amount;—and that the record of sales was kept by the defendant on a separate paper.—This paper, being produced, was found to be without any title or caption, and to have been written partly by the defendant, without date, and partly by other persons at subsequent periods which were dated. Among the

names on the list set down by the defendant was his own, thus—
" *No.* 13, *B. Bartol* $86," and in another place in a column
headed " gallery" was "3, *B. Bartol*—24." The others were
written in the same manner.

It also appeared that at a subsequent meeting, held *Feb.* 7,
1818, the defendant was discharged at his own request from all
the committees on which he had been appointed ;—that about
the first of *May* following he removed to *Portland;*—that in *April,*
before his removal, he paid to *Nye,* the treasurer, twenty-four
dollars, being the price of the gallery pew, but gave him at the
same time to understand that he should pay no more money ;—
that he was afterwards often in *Freeport,* having a farm there ;
but never gave any note, nor was requested to give one, nor was
offered any deed, nor demanded one ;—nor was any other inter-
course proved between him and the plaintiffs or their agents on
this subject, except that a letter was sent to him *Nov.* 9, 1821,
demanding payment, of which he took no notice.

It was further proved that in *July* 1818, the meeting house,
which was then nearly finished, was consumed by fire ; and that
another was soon after erected on the same site, on a similar
plan, except that it was a few feet larger, and that the side pews
stood obliquely to the outer walls.

Upon this evidence the Chief Justice directed the jury to re-
turn a verdict for the plaintiffs, reserving the questions of law
made by the counsel for the defendant for the consideration of
the whole Court.

*Longfellow* and *Greenleaf,* for the defendant, argued in support
·of the following positions.

1. The case shews no contract in writing ; and the suit being
for the price of real estate, the defendant is not bound, according
to the statute of frauds. The contract is void,—1st. for want of
*mutuality,* the plaintiffs not being bound, by any memorandum in
writing, to give him a deed ; and it is of the essence of an
" agreement" that it be so perfect as to give each party a reme-
dy upon it by action. 1 *Com. Dig.* 411. *Agreement* A. 1, cited
and approved by Ld. *Ellenborough* in *Wain v. Warlters* 5 *East*
16. *Bromley v. Jeffries* 2 *Vern.* 415. *Armiger v. Clarke Bunb.*

111. *Lawrenson v. Butler* 1 *Sch. & Lefr.* 20. *Haddleston v. Briscoe* 11 *Ves.* 592. *Champion v. Plumer* 1 *New Rep.* 253. *Buckmaster v. Harrop* 13 *Ves.* 456. 1 *Mad. Ch.* 423—4. The opposing cases are only found in those States where a Court of Chancery is open, in which complete justice may be done ; and in Chancery the party seeking performance always offers on his own part to perform. But there being no Court of Chancery in this State, and the contract being made before the statute giving specific remedies in equity, the principle of mutuality ought to be followed, it being confessedly the best founded. *Per Kent* C. in *Clason v. Bailey* 14 *Johns.* 484. If the plaintiffs prevail, and refuse to give a deed, the defendant cannot recover back the money, it having been paid under a judgment. But 2dly, if the contract be mutual, yet it is imperfect, and therefore void ; the paper signed not containing *in itself* any reference to the terms of the sale, nor disclosing the parties ; and parol evidence not being admissible to connect the two papers together. *Clinan v. Cooke* 1 *Sch. & Lefr.* 22. *Hind v. Whitehouse* 7 *East* 569. *Boydell v. Drummond* 11 *East* 142. *Bailey & al. v. Ogden* 3 *Johns.* 399. *Abeel v. Radcliff* 13 *Johns.* 297. *Dodge v. Lean* 13 *Johns.* 508. *Sherburne v. Shaw* 1 *New Hamp. Rep.* 157.

2. Part performance does not render it valid. In the case of lands, the payment of money is not treated as part performance. 1 *Sch. & Lefr.* 41. Nor is any other act which is equivocal, or which easily admits compensation. *Frame v. Dawson* 14 *Ves.* 386. This doctrine, it is already admitted, has been extended too far in equity. 1 *Mad. Ch.* 379. 2 *Sch. & Lefr.* 5. *Grant v. Naylor* 4 *Cranch* 235. And at law its application is totally denied. *O'Herlihy v. Hedges* 1 *Sch. & Lefr.* 123, 130. *Kidder v. Hunt* 1 *Pick.* 328.

3. But if it was a contract, and binding, it related only to the first house, which was destroyed by fire ; and not to the second, which was erected after the defendant left the town, and after he ceased to have any connection with the affairs of the parish.

4. The new house being completed before the last day of payment, and no time having been mentioned for executing the deed, the *reasonable* time was on payment of the last instalment ; and

the action being for *this* instalment, as well as for the others, a deed should have been tendered, and the tender averred.

*Orr* and *Mitchell*, on the other side, contended, 1st. That the contract at the time of sale of the pews was not an agreement for the sale of real estate, pews being merely qualified property;— *Gay v. Baker* 17 *Mass.* 435,—and the erection of a pew being in the nature of improvements only, which are not within the statute of frauds. *Frear v. Hardenburg* 5 *Johns.* 272.

2. If it were within the statute, it is sufficiently signed, the defendant being the agent of both parties, and his act being obligatory on both.

3. But the true contract is found in the report of *Dec.* 13, 1817, in which the defendant is to be understood as engaging to purchase, and the parish to sell. The after designation of the pew finished the bargain, and perfected the rights of the parties. *Coles v. Trecothick* 9 *Ves.* 250. On the purchase of the real estate by the parish, each member became a *cestui que trust*. The parish holds the property in trust, and is to declare the uses by vote ; and the contract was not that the parishioners should severally receive a deed of real estate, but that the parish should build for each one a pew.

WESTON, J. delivered the opinion of the Court as follows, at the ensuing *August* term in *Oxford*.

The statute of frauds provides that no action shall be sustained upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning the same, unless upon an agreement in writing. Pews are made by statute real estate ; and although held in a qualified manner, according to the case of *Gay v. Baker* 17 *Mass.* 435, yet they descend to the heir like other real estate, pass by the same forms of conveyance, and are protected by the same remedies. We can therefore, entertain no doubt that all contracts for the sale of pews are within the statute of frauds.

It has been contended that the erection of the meeting house, and the finishing of the pews by the plaintiffs, takes the case out

of the statute, upon the principle of part performance ; but the better opinion is, that this principle is applicable to Courts of equity only. *Cook v. Jackson* 6 *Ves.* 39. *Jackson v. Pierce* 2 *Johns.* 224.

The defendant signed a paper, a copy of which makes a part of this case ; but that paper proves no agreement ; sets forth no terms or conditions ; and is altogether defective as evidence of a contract. It is in proof that there did exist, at the time of the defendant's subscription, a paper now lost, in which the terms and conditions of sale, proposed by the town, were clearly and distinctly set forth ; but the paper signed and produced has no reference to the paper lost. Its connexion with it therefore can only be shewn by parol evidence, which, we are clearly of opinion, is inadmissible under the statute. The instrument signed, or others to which it refers, and which are thereby made a part of it, should contain the whole agreement ; at least so far as it is intended to affect the party to be charged. The admission of parol testimony to make out and complete such agreement, would defeat the object of the statute, which was intended, by the exclusion of testimony of this description, to lessen the facilities as well as the temptation for the commission of fraud and perjury.

The case of *Boydell v. Drummond* 11 *East* 140, is precisely in point. Proposals had been issued by the plaintiff and his partner, who had deceased prior to the suit, for the publication of a large number of prints from some of the scenes in Shakspeare's plays, upon certain terms and conditions specified. Printed copies of the prospectus of the publishers were lying in their shop for general inspection ; but the book, in which the defendant signed his name, had only for its title, " Shakspeare subscribers, their signatures," without any reference to the prospectus. And as their connexion could only be proved by parol testimony, which was not admissible under the statute of frauds, the Court decided that the defendant was not legally charged.

We have not deemed it necessary to examine other points taken in the argument ; being satisfied that, for the reasons before stated, the proof adduced is insufficient to sustain the action. The verdict is set aside and a new trial granted.